IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISON OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| MERCHANTS COMMERCIAL BANK,<br><br>                              Plaintiff,<br>     v.<br><br>NORTH DROP ASSOCIATES, LLC, CHARLES R. ABELE, JR., and HOLLY JACKSON ABELE,<br><br>                              Defendants. | No. 3:10-cv-00134<br><br>ACTION FOR BREACH OF CONTRACT(2), DEBT, FORECLOSURE OF REAL PROPERTY MORTGAGE, AND ENFORCEMENT OF GUARANTY |

## ORIGINAL COMPLAINT

Plaintiff MERCHANTS COMMERCIAL BANK complains against Defendants NORTH DROP ASSOCIATES, LLC, CHARLES R. ABELE, JR., and HOLLY JACKSON ABELE as follows:

### I.  PARTIES

1.  Plaintiff MERCHANTS COMMERCIAL BANK ("Merchants") is a Virgin Islands banking corporation organized under the laws of the United States Virgin Islands with its principal place of business located at 4608 Tutu Park Mall, St. Thomas, Virgin Islands 00802-1735.

2.  Defendant NORTH DROP ASSOCIATES, LLC ("North Drop") is a Florida limited liability company with, upon information and belief, an address of 1200 Ponce De Leon Blvd., 1st Floor, Coral Glades FL 33134; and, upon information and belief, a citizen of Florida for diversity purposes.

3.  Defendant CHARLES R. ABELE, JR. ("Charles Abele") is an individual and, upon information and belief, a citizen of Florida for diversity purposes.

4.      Defendant HOLLY JACKSON ABELE ("Holly Abele") is an individual and, upon information and belief, a citizen of Florida for diversity purposes.

## II.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to V.I. Code Ann. tit. 4, § 76 (1997).

6.      Venue in the District of St. Thomas and St. John is proper because the real property that is the subject of this action is located in that District.

## III.   FACTS

### The Loan Agreement

7.      On April 17, 2008, North Drop executed a loan agreement with Merchants whereby Merchants agreed to loan North Drop the amount of $1,050,000.00 (the "Loan Agreement").  A copy of the Loan Agreement is attached as **Exhibit A**.

8.      Under the terms of the Loan Agreement, North Drop agreed to make thirty-six (36) monthly installments of prinicipal and interest over a three-year term pursuant to a fifteen-year amortization schedule, where the thirty-sixth payment shall be a balloon payment of such amount as may be necessary to repay the remaining principal balance of the loan, plus any accrued and outstanding interest.

### The Note

9.      Under the terms of the Loan Agreement, North Drop executed and delivered to Merchants a promissory note dated April 17, 2008 obligating itself to pay the principal amount of $1,050,000.00, together with interest at the Prime Rate as published in the Eastern Edition of the Wall Street Journal, plus one percent, per annum (the "Note").  A copy of the Note is attached as **Exhibit B**.

## The Mortgage

10.     To secure payment of the Note, North Drop granted to Merchants a first-priority mortgage dated April 17, 2008 (the "Mortgage") over real property described as:

> Parcel No. C-72 Remainder Estate Lovenlund
> No. 2 Great Northside Quarter
> St. Thomas, Virgin Islands
> as shown on PWD No. A9-677-T006  (the
> "Property").

The Mortgage was duly recorded with the Recorder on April 17, 2008 as Document No. 2008004446.  A copy of the Mortgage is attached as **Exhibit C**.

11.     The Mortgage provides that North Drop shall pay to Merchants the payments due under the Note, and the Mortgage secures repayment thereunder.

## The Charles Abele Guaranty

12.     To further secure payment of the Note, Charles Abele executed a personal guaranty dated April 17, 2008 (the "Charles Abele" Guaranty).  A copy of the Charles Abele Guaranty is attached as **Exhibit D**.

13.     Under the terms of the Charles Abele Guaranty, Charles Abele unconditionally agreed that they would promptly perform and observe every term and condition of the Loan Agreement that was to be performed or observed by North Drop; and that all sums stated to be payable or which become payable under the Loan Agreement; and all other sums that may be owing by  North Drop to the Bank would be promptly paid in full when due, together with interest and any and all legal and other costs and expenses paid or incurred in connection therewith by the Bank.

14.     Furthermore, under the terms of the Charles Abele Guaranty, Charles Abele unconditionally agreed that the Bank may declare the obligations, liabilities, and indebtedness of

North Drop to be due and payable; and that, in the event of any such declaration, such obligations, whether or not due and payable by North Drop shall become due and payable by Charles Abele.

### The Holly Abele Guaranty

15. Likewise, to further secure payment of the Note, Holly Abele executed a personal guaranty dated April 19, 2008 (the "Holly Abele Guaranty"). A copy of the Holly Abele Guaranty is attached as **Exhibit E**.

16. Under the terms of the Holly Abele Guaranty, Holly Abele unconditionally agreed that they would promptly perform and observe every term and condition of the Loan Agreement that was to be performed or observed by North Drop; and that all sums stated to be payable or which become payable under the Loan Agreement; and all other sums that may be owing by North Drop the Bank would be promptly paid in full when due, together with interest and any and all legal and other costs and expenses paid or incurred in connection therewith by the Bank.

17. Furthermore, under the terms of the Holly Abele Guaranty, Holly Abele unconditionally agreed that the Bank may declare the obligations, liabilities, and indebtedness of North Drop to be due and payable; and that, in the event of any such declaration, such obligations, whether or not due and payable by North Drop shall become due and payable by Holly Abele.

### The Modified Loan Agreement

18. On or about June 19, 2010, Merchants and North Drop executed a modification to the Loan Agreement ("the Modified Loan Agreement"). A copy of the Modified Loan Agreement is attached as **Exhibit F**.

19. Under the terms of the Modified Loan Agreement and the Modified Note, North Drop that, commencing January 5, 2010 through November 5, 2010, it would make interest

payments only, with principal payments in the amount of $50,600.00 and accrued interest at the default rate of the Wall Street Journal prime rate plus five percent to be paid in one lump sum on or before December 5, 2010.

20. (The Loan Agreement, the Note, the Mortgage, the Charles Abele Guaranty, the Holly Abele Guaranty, and the Modified Loan Agreement may be referred to collectively hereinafter as "the Loan Documents.")

### The Default under the Loan Documents

21. On or about January 5, 2010, North Drop defaulted under the terms and conditions of the Note, in that monthly installments of principal and interest became due pursuant to the Note and were unpaid.

22. Likewise, North Drop defaulted under the terms and conditions of the Mortgage, in that monthly installments of principal, interest, and other charges became due pursuant to the Note and Mortgage and remained unpaid.

23. Additionally, North Drop defaulted under the terms of the Modified Loan Agreement by failing to make payments as required under those instruments.

24. Furthermore, Charles Abele failed to cure such defaults or answer for the debt due under the Note as required by the terms of the Charles Abele Guaranty.

25. Likewise, Holly Abele failed to cure such defaults or answer for the debt due under the Note as required by the terms of the Holly Abele Guaranty.

26. On March 18, 2010 and October 20, 2010, Merchants sent notices of default to North Drop declaring that it had breached the terms of both the Loan Agreement and the Modified Loan Agreement, and that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien. Copies of Merchants's notices are attached collectively as **Exhibit G**.

27. To date, the default has not been cured and North Drop remains in default under the terms of the Note.

28. Likewise, to date, North Drop remains in default under the terms of the Mortgage.

29. Additionally, Charles Abele is in default under the terms of the Charles Abele Guaranty, and Holly Abele is in default under the terms of the Holly Abele Guaranty.

30. Pursuant to the terms of the Note, Merchants has elected that the whole principal sum with all unpaid accrued interest shall be immediately due and payable.

31. Under the terms of the Loan Agreement, in the event of default, Merchants may foreclose on the Mortgage.

32. All conditions precedent to the maintenance of this action have occurred, been performed, or been excused.

## IV. CAUSES OF ACTION

### Count One: Breach of Contract
### (v. North Drop)

33. Merchants realleges all of the preceding paragraphs and incorporates them by reference.

34. The Loan Agreement imposed an absolute duty upon North Drop to make thirty-six (36) monthly installments of prinicipal and interest over a three-year term pursuant to a fifteen-year amortization schedule, where the thirty-sixth payment shall be a balloon payment of such amount as may be necessary to repay the remaining principal balance of the loan, plus any accrued and outstanding interest.

35. The culpable and unjustified failure of North Drop to make monthly payment as agreed deprives Merchants of the substantial benefit of its bargain as contemplated by the Loan Agreement.

36. North Drop has failed to cure its breach of the Loan Agreement.

37. The failure of North Drop to make monthly installment payments as agreed constitutes a material breach of its absolute duty to perform under the Loan Agreement. Restatement (Second) of Contracts § 235(2) & 241.

## Count Two: Breach of Contract
### (v. North Drop)

38. Merchants realleges all of the preceding paragraphs and incorporates them by reference.

39. The Modified Loan Agreement imposed an absolute duty upon North Drop to make interest payments only, with principal payments in the amount of $50,600.00 and accrued interest at the default rate of the Wall Street Journal prime rate plus five percent to be paid in one lump sum on or before December 5, 2010.

40. The culpable and unjustified failure of North Drop to make payment as agreed deprives Merchants of the substantial benefit of its bargain as contemplated by the Modified Loan Agreement.

41. North Drop has failed to cure its breach of the Modified Loan Agreement.

42. The failure of North Drop to make payment as agreed constitutes a material breach of its absolute duty to perform under the Modified Loan Agreement. Restatement (Second) of Contracts § 235(2) & 241.

## Count Three: Debt
### (v. North Drop, Charles Abele, and Holly Abele)

43. As of December 15, 2010, there is due and owing to Merchants by North Drop the principal sum of $965,723.46; plus accrued interest in the amount of $23,346.04, which interest

continues to accrue at the rate of $114.01 per diem; plus Late Charges in the amount of $3,262.61; for a total amount due of $992,332.11.

44. Under the terms of the Note, Merchants is entitled to collect all sums due under that instrument from North Drop.

45. Under the terms of the Mortgage, Merchants is entitled to be reimbursed for any insurance premiums, taxes, or other charges that it pays with respect to the Property.

46. Under the terms of the Note, Mortgage, the Charles Abele Guaranty, and the Holly Abele Merchants is entitled to be reimbursed for reasonable attorney fees and other expenses incurred by Merchants to enforce payment of the Note or incidental to foreclosure of the Property.

47. The amounts due under the terms of the Note and Mortgage and guaranteed by the Charles Abele Guaranty and the Holly Abele are for a fixed and definite sum, or a sum that by computation can be readily ascertained.

### Count Four: Foreclosure of Real Property Mortgage
### (v. North Drop, Charles Abele, and Holly Abele)

48. Merchants realleges all of the preceding paragraphs and incorporates them by reference.

49. Merchants is the holder of the Note and Mortgage, and is entitled to maintain this foreclosure action thereby.

50. North Drop is in default under the terms and conditions of the Note and Mortgage for failure to make timely payment of principal when due.

51. Merchants is entitled to foreclosure of its lien upon the Property, the foreclosure of all inferior liens, the sale of the Property to satisfy the Note, and the recovery of any deficiency from North Drop, Charles Abele, and Holly Abele. 28 V.I.C. § 531 (1996).

## Count Five:  Enforcement of Guaranty
### (v. Charles Abele and Holly Abele)

52. Merchants realleges all of the preceding paragraphs and incorporates them by reference.

53. Charles Abele executed the Charles Abele Guaranty, unconditionally promising that he would assume the obligations under the Note if North Drop failed to perform its obligations under that instrument.

54. Likewise, Holly Abele executed the Holly Abele Guaranty, unconditionally promising that she would assume the obligations under the Note if North Drop failed to perform its obligations under that instrument.

55. North Drop has in fact failed to perform its obligations under the Note.

56. At the time of the execution of the Charles Abele Guaranty, Charles Abele reasonably expected that his guaranty would induce Merchants to extend credit to North Drop, as demonstrated by and set forth in the Note.

57. At the time of the execution of the Holly Abele Guaranty, Holly Abele reasonably expected that her guaranty would induce Merchants to extend credit to North Drop, as demonstrated by and set forth in the Note.

58. In reliance on the execution of the Charles Abele Guaranty by Charles Abele and the Holly Abele Guaranty by Holly Abele, Merchants was induced to extend credit to North Drop, as demonstrated by and set forth in the Note.

59. Merchants has been unsuccessful in its collection efforts against Charles Abele.

60. Charles Abele has breached the terms of the Charles Abele Guaranty, and Holly Abele has breached the terms of the Holly Abele Guaranty each by failing to answer for the debt of North Drop as evidenced by the Note, and thereby resulting in monetary damages to

Merchants.  Restatement (Second) of Contracts § 88 (1981); Restatement (Third) of Suretyship & Guaranty § 9 (1996).

  61. The respective terms of the Charles Abele Guaranty and the Holly Abele Guaranty provide that Charles Abele and Holly Abele waive any and all defenses that might be available either to discharge their respective obligations under their respective guarantys or to discharge the obligation of North Drop under the Note.

## V. PRAYER FOR RELIEF

  WHEREFORE, Merchants requests the following relief:

  a. Judgment that, under the terms of the Note, the Charles Abele Guaranty, and the Holly Abele Guaranty, North Drop, Charles Abele, and Holly Abele are indebted, jointly and severally, to Merchants in the amount of $1,050,000.00, plus interest, costs, expenses, and attorney fees, for a total amount due of $992,332.11 as of December 15, 2010;

  b. Judgment declaring that North Drop has defaulted under the terms of the Loan Agreement as modified, the Note, and the Mortgage, thereby entitling Merchants to exercise all of the remedies provided for in those instruments;

  c. Judgment declaring that North Drop has defaulted under the terms of the Guaranty, thereby entitling Merchants to exercise all of the remedies provided for in that instrument;

  d. Judgment declaring that Charles Abele has defaulted under the terms of the Charles Abele Guaranty, thereby entitling Merchants to exercise all of the remedies provided for in that instrument;

  e. Judgment declaring that Holly Abele has defaulted under the terms of the Holly Abele Guaranty, thereby entitling Merchants to exercise all of the remedies provided for in that instrument;

  f. Judgment declaring the outstanding unpaid debt due on the Note, including principal, interest, costs, expenses, and attorney fees, whether already or hereafter incurred;

  g. Judgment foreclosing the Mortgage and all inferior liens and ordering that the Property be sold and that Merchants be paid from the proceeds of the sale all amounts due on the Note, including, but not limited to, any sums that Merchants may pay for insurance premiums, taxes, or other charges with respect to the Property, with interest from the date of payment;

  h. Judgment declaring that North Drop and all persons claiming from and under them are barred and forever foreclosed of all right, title lien, claim, and equity of redemption in and to the Property, subject only to the statutory right of redemption except where waived and released;

  i. Judgment against North Drop, Charles Abele, and Holly Abele for any deficiency that may remain after the sale of the Property;

  j. An order appointing a receiver, if requested by Merchants, to collect and receive the rents and profits of the Property, if any, during the pendency of this action; and

  k. Judgment awarding Merchants such other and further relief as is just and equitable.

 //

 //

 //

 //

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 20, 2010 | s/ A. JENNINGS STONE, ESQ. |
|  | A. Jennings Stone, Esq. |
| *Attorneys for Plaintiff MERCHANTS COMMERCIAL BANK* | BoltNagi PC |
|  | 5600 Royal Dane Mall, Suite 21 |
|  | Suite 21 |
|  | St. Thomas, VI 00802 |
|  | (340) 774-2944 Telephone |
|  | (340) 776-1639 Facsimile |
|  | ajstone@vilaw.com |

# VALIDATION OF DEBT NOTICE

Date of this Notice: December 20, 2010

*In accordance with 15 U.S.C. 1692e (11), please be advised that the purpose of this Notice is to collect a debt, and any information obtained from you will be used for that purpose. Each of the following items applies directly to the debt, which BoltNagi PC, as Creditor's Attorney Firm, is attempting to collect from you:*

As of , the Total Amount Owed on the debt is $992,332.11, which includes the principal balance, plus accrued interest, late fees, and other charges. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. If you pay the total amount owed shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write BoltNagi PC at the address listed below or call 340-774-2944.

1. Merchants Commercial Bank is the creditor to whom the debt is owed.

2. Unless you notify BoltNagi PC within 30 days of your receipt of this notice, that you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by BoltNagi PC.

3. If you notify BoltNagi PC in writing within thirty days of your receipt of these documents that the debt, or any portion thereof, is disputed, Tom BoltNagi PC will obtain verification of the debt or a copy of the judgment against you and a copy of such verification or judgment will be mailed to you by BoltNagi PC.

4. Upon your written request within 30 days of your receipt of this notice, BoltNagi PC will provide you with the name and address of the original creditor, if different from the creditor listed above.

5. The Total Amount Owed on the debt as of the date of this Notice is the total amount owed based on the information provided to us. We reserve the right to correct any error in calculating the Total Amount Owed at any time.

6. Requests and notices should be addressed to the Creditor's attorney as follows:

> BoltNagi PC
> 5600 Royal Dane Mall, Suite 21
> St. Thomas, VI  00802
> Phone: (340) 774-2944
> Fax:    (340) 776-1639